### F. W. BOND *v.* OCTAVIUS COKE.

A cotton gin and press annexed to the freehold in the usual way; become fixtures: *Therefore*, where A had mortgaged his land to B to secure the payment of certain debts, and afterwards built thereon a gin house in which he placed a cotton gin and press, attaching them in the usual manner, occupying and using the same for a number of years and then sold the equity of redemption, together with certain personal property including the gin and press by name to C; and B having sold the land under the first trust, excepting the gin and press, but making no exceptions whatever as to gin and press in his deed to the purchaser: *Held*, that the purchaser at B's sale acquired title to the gin and press, as any verbal exceptions at the sale would have no effect in controlling the provisions of the deed.

(*Latham* v. *Blakely*, 70 N. C. Rep. 368; *Clayton* v. *Liverman*, 7 Ired. 92; *Flynt* v. *Conrad*, Phill. 190; *Brittain* v. *McRay*, 1 Ired. 265, cited and approved.)

CIVIL ACTION for claim and delivery of a certain cotton gin and press, tried at the Spring Term, 1874, of the Superior Court of CHOWAN county, before his Honor, *Judge Albertson*, and a jury.

In August, 1870, the plaintff conveyed a tract of land to Pruden, in trust to secure the payment of certain debts. In the Fall of that year, the plaintiff, continuing to occupy and cultivate the land, and for its more beneficial enjoyment, built upon it a gin house in which he placed a cotton gin and press. The press was solidly fastened to the house, and the gin was confined in the usual way, by strips of wood nailed to the flooring, to hold it steady when at work. Both were used by plaintiff in preparing his own crops for market, and also in ginning and packing for others for toll.

In February, 1872, the plaintiff conveyed, by deed in trust, to Biggs his equity of redemption in said lands, and also personal property among which is named the "Cotton Gin and Press" in dispute.

On the 3rd February, 1873, Pruden, the trustee, sold the

7

lands under the first trust, excepting the gin and press which had been conveyed to Biggs, or attempted to be, at which sale the defendant purchased and received a deed in the usual form, without any exceptions in it as to the gin and press. The defendant, in his answer, denies all knowledge of any exception of the gin and press at the time of the sale and purchase of the land by him.

On the 3rd February, 1873, the plaintiff went into bankruptcy, and the debts secured in both trusts having been satisfied without a sale of the gin and press, the United States Marshal took possession, and Winston, the assignee, under the bankrupt law, duly assigned to the plaintiff the gin and press. The defendant, soon after his purchase, took possession of the land and gin and press, and this action was commenced by the plaintiff.

Under the instructions of his Honor, the jury returned a verdict for the plaintiffs. Judgment in accordance with the verdict, and appeal by defendant.

*Moore & Gatling*, for appellant.
*A. M. & Jno. A. Moore*, contra.

BYNUM, J., after stating the facts of the case as above, proceeded:

In the case of *Latham* v. *Blakely*, 70 N. C. Rep., 368, decided at last term, this Court, in a very similar case of facts, upon a thorough review of all the conflicting authorities, *held* that the gin was a fixture. That case governs this as to the *status* of the gin and press, which we declare to be fixtures to the land and a part of the freehold.

The case is not altered by the fact that these fixtures were erected subsequent to the mortgage. In *Winslow* v. *The Merchants Ins. Co.*, 4 Metcalf, 306, it was held that a steam engine and other machinery of a manufactory were to be considered as fixtures, and had vested as such in the defendants under a mortgage of the building prior to the period at which

they were erected against the plaintiff who claimed as here, under a subsequent specific mortgage of the machinery itself. Many cases to the same effect are collected in 2 Smith L. Cases, 254-5.

The gin and press having thus been so far annexed to the freehold as to acquire the character of fixtures, became mere incidents to the realty and conformed to all the laws by which it is governed, subject to the dower of the widow, descend to the heir, pass to the vendee of the land, unless expressly excepted in the conveyance, &c. *Preston* v. *Briggs*, 16 Vermont, 124; 12 N. H., 205; 6 Cowen, 665; 2 *Smith L. Cases*, 255.

The title to the gin and press, having thus vested in the trustee, Pruden, as part of the realty, passed by his sale and conveyance to the defendant, unless the exception of these two articles, at the sale of the land, had the effect of preventing the title as to the gin and press from passing with the land.

This is the ground of the plaintiff's claim, but there are several fatal objections to its validity.

1. The general rule of law is, that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument; therefore, when, as to the extent and limitations of an estate, in a deed, the intention of the maker is to be ascertained, the Court must decide upon the face of the instrument itself. 1 Greenl. Ev. S., 275-6. *Clayton* v. *Liverman*, 7 Ire. 92. The deed, in our case, containing no exception of the gin and press, the legal effect of it is to pass them to the defendant, and no parol evidence to the contrary is admissible.

2. The exception of the gin and press at the sale being an agreement touching the sale of an interest in lands, the Statute of Frauds requires it to be in writing. And even if the agreement reserving the gin and press had been in writing, it could only be set up by a bill in equity to reform the deed on the ground of accident or mistake in the draftsman, for the effect of the deed is to pass the land and every substantial part of it; hence, if there be a parol agreement to convey land and to ex-

cept the fruit or trees, or certain timber trees, and a deed is ex
ecuted which does not except the fruit or trees, that part of the
agreement in respect to them is defeated. *Flynt* v. *Conrad,*
Phil. 190.

The case just cited, of *Flynt* v. *Conrad,* illustrates the dis-
tinction between those chattels which by annexation become
merged in the land, and those which though so annexed to the
land do not become a part of it. Thus growing crops may be
reserved by parol by the vendor of the land, in which case they
do not pass by the deed conveying the land. The reason is
that they are *fructus industrialis,* and for most purposes re-
garded as personal chattels, even before they are severed from
the soil ; therefore upon the death of the owner of the land be-
fore they are gathered, they go to the executor and not the
heir ; they are liable to be seized and sold under execution as
personal chattels; and by statute, growing crops are the sub-
ject of larceny. *Brittain* v. *McRay,* 1 Ire., 265.

The Statute of Fraud thus not applying to agreements con-
cerning growing crops, parol evidence is admissible to show
that they were to remain the property of the grantor in the
sale of the land.

But personal chattels which have been fixtures are incor-
porated in, and are, a part of the land as much so as a house
or tree, until an *actual* severance and therefore, a deed con-
veying the land without excepting therein the fixtures, has the
legal effect of passing the gin and press, which are part and
parcel of the land.

PER CURIAM.     Judgment reversed, and *venire de novo.*