### THE STATE v. J. D. WILLIAMS.

*Landlord and Tenant—Removing Crops—Intent.*

1. Where a tenant without the consent of, or notice to, his landlord, and before satisfying the latter's liens, removed a portion of the crop from the land upon which it was produced and stored it in a building upon his (the tenant's) own land: *Held*, that he was guilty of unlawfully removing crops, notwithstanding he made the removal for the purpose of sheltering the crop, and kept it separate from others. The intent with which the removal was made is not an essential element.

2. A tenant may, in good faith, for the purpose of preserving the crop, sever it from the land and remove it to a place of security *upon the land* upon which it was produced, without notice to his landlord.

CRIMINAL ACTION, tried at Spring Term, 1890, of WILSON Superior Court, *Armfield, J.*, presiding.

The defendant is indicted as tenant of the prosecutor for removing part of the crop from the land in violation of the statute (*The Code*, § 1759). He pleaded not guilty, and on the trial testified in his own behalf as follows: "The contract between the prosecutor and myself was for fifty acres of land, ten in corn, forty in cotton, to be cultivated by me on halves. Nothing was said as to how the crop was to be divided. We picked out 202 pounds of cotton and carried it to the gin-house and kept it to itself. The prosecutor then notified me not to move any more until I paid my store account. I got the money and offered to pay him all but $7.50, which I refused to pay. There was no house on the rented premises to store the cotton in. I moved one load of the cotton after I had picked it out off the premises to my own gin-house without notice to the landlord. I moved it off for the purpose of sheltering it until it could be divided, and kept it separate from the other cotton. My purpose in

moving it was not to deprive the landlord of his rent.  The landlord took the cotton under claim and delivery, and got his rent out of it."

The Court instructed the jury that if the evidence of the defendant thus given was true, then he was guilty.  The defendant excepted.

There was a verdict of guilty, and judgment thereupon, from which he appealed.

*The Attorney General* for the State.

*Messrs. Jacob Battle, J. B. Batchelor* and *John Devereux, Jr.,* for defendant.

MERRIMON, C. J.—after stating the case as above: The statute (*The Code,* § 1759), under which the defendant is indicted, prescribes that "Any lessee, or cropper, or the assigns of either, or any other person, who shall remove said crop, or any part thereof, from such land without the consent of the lessor or his assigns, and without giving him or his agent five days' notice of such intended removal, and before satisfying all the liens held by the lessor or his assigns on said crop, shall be guilty of a misdemeanor; and if any landlord shall unlawfully, wilfully, knowingly and without process of law, and unjustly, seize the crop of his tenant when there is nothing due him, he shall be guilty of a misdemeanor."  The obvious purpose of this very stringent statutory provision is two-fold—

First. Inasmuch as the crops raised on the land are ordinarily in the actual possession of the tenant, but by the statute (*The Code,* § 1754) "are deemed and held to be vested in the possession of the lessor or his assigns at all times until the rents shall be paid," &c., the purpose is to protect the landlord or his assigns against the tenant or his assigns, and all other persons, until the rents shall be paid, by preventing the removal of the crops, or any part of them, *from the land*

without the consent of the landlord or his assigns, or without notice as prescribed. The leading and material part of the purpose is to keep the crops on the land, so that they may be easily seen, known, identified and protected, and to prevent fraud and fraudulent practices that would be greatly facilitated by removing them from the land to any distance. If the crops should be so removed, the right of the landlord as to them and his lien upon them would depend generally very much upon what the tenant might do or say in respect to them. The object is to prevent this as much as practicable—to preserve the more certain and reliable evidence of the crops themselves present on the land. The tenant might be honest and faithful—he might not be so; he might state on, or off, his oath truly what part of the crops he had removed from the land, when and to what place—he might not; he might put the crops (part of them) in his gin-house or barns, or elsewhere—he might not. The purpose is to cut off such opportunities to prejudice the landlord, and to afford the material advantage of keeping the crops certainly identified on the land as indicated above.

How far the tenant might be justified under the statute in severing the crops from the land and storing them on it simply for the purpose of protection to them has been doubtful, but it has been held that he may do so in good faith for such purpose; he may not go beyond that. *Varner* v. *Spencer*, 72 N. C., 381. This is allowed upon the ground of necessity. Such allowance increases the opportunity for fraudulent practices, but not to the extent that would result from allowing the crops to be stored off the land in a gin-house or barn, where other like crops might be stored, or, indeed, anywhere. To allow the crops to be so removed off the land at all, violates not only the letter, but the spirit and purpose of the statute as well.

It is said, "Shall the tenant not be allowed to protect the crops?" Most assuredly he shall be, in good faith, on the

land. If it shall be necessary, in possible cases, to remove them from the land for their protection, this should be done on notice, or legal steps taken as contemplated and allowed by the statute.

Second. The purpose of the statute is to protect the tenant and his assigns from unlawful and unjust seizure of the crops by the landlord or his assigns, by virtue of the statutory provision which declares that "all crops raised on said land shall be deemed and held to be vested in possession" of them "until the rents for said land shall be paid," &c.

The statute broadly forbids the removal of the crops, or any part of them, from the land, except in the case and in the way prescribed, and that without regard to the actual intent. The removal forbidden implies the intent to commit the offence. As was said in *State* v. *McBrayer*, 98 N. C., 619, "It is only when the positive, wilful purpose to violate a criminal statute as distinguished from a mere violation thereof, is made an essential ingredient of the offence that honest mistake and misapprehension excuses and saves the alleged offender from guilt." *State* v. *Dickens*, 1 Hay., 468 (407); *State* v. *Boyett*, 10 Ired., 336; *State* v. *Presnell*, 12 Ired., 103.

The testimony of the defendant went directly to prove that he had removed part of the crop from the land without notice to the landlord and before all the rents were paid. The Court, therefore, properly instructed the jury that if they believe the witness himself he was guilty.

Affirmed.