S. R. HORNE v. J. W. SMITH et al.

*Fixtures—Practice—Counter-case on Appeal.*

1. Where it appears that an engine and boiler were in a shed attached to a main building, connected with and used to operate a saw-mill, attached to the land in the usual way, the engine being supplied with water from a pond made for the purpose, the saw-mill, engine and boiler are fixtures, and pass by a deed to the land.

2. As between vendor and vendee of land, the intent of the owner of the land, when he placed the saw-mill, engine and boiler upon it, is not competent to vary the terms of the deed.

3. An appellee may serve a "counter-case" to the "case on appeal," served by the appellant, instead of specific exceptions.

CIVIL ACTION, tried before *Graves, J.,* at February Term, 1889, of WAKE Superior Court.

There was a verdict in favor of the defendants, and from the judgment rendered thereon the plaintiff appealed.

*Messrs. J. B. Batchelor* and *S. G. Ryan*, for the plaintiff.
*Messrs. C. M. Busbee* and *W. W. Fuller*, for defendants.

CLARK, J.: The plaintiff bought the engine, boiler and saw-mill under an execution against C. J. Green. C. J. Green had executed, prior to said judgment and execution, a deed in trust to the tract of land upon which the said engine, boiler and saw mill were located. At the trustee's sale, which was also prior to said execution, the defendants purchased the said tract of land. Neither in the deed from C. J. Green to the trustee, nor from the trustee to the defendants, was there any reservation of, nor any words indicating any intention to reserve, the engine, boiler and saw-mill from passing by the conveyance of the freehold.

The Court instructed the jury: "If there was a two-story building put on the ground in the usual way in an excavation made therefor, and there was a grist-mill put therein, and an engine and boiler in a shed attached to the main building, connected with and used to operate a saw-mill attached to the land in the usual way, and the engine was supplied with water from a pond made for the purpose, then the saw-mill and engine and boilers were fixtures to the land, and the deed of Calvin J. Green conveyed them, and they passed by the sale of the trustee and his deed to the defendants." To this the plaintiff excepted.

There had been much argument about the question of whether the property was a fixture passing with the land by deed, and many authorities read, and, in order to explain the matter more fully to the jury, the Court went on to say: "There are instances in which fixtures attached to the land may still remain as personal property. For the encouragement of trade and manufacturing, and for the convenience of business, the law allows tenants, and all persons occupying the land of another, by his consent, to erect any building and to attach any machinery as they may think proper,

and gives them the right to remove such buildings or machines. But here this relation does not exist. We have here a man owning the land and owning the mill, and the fixtures pass with the land." The plaintiff excepted.

On the argument, much stress was laid on Green's supposed intention to regard the mill and engine as personal property, and the Court instructed the jury further:

"The question of Green's intent is to be governed by the deed, and he, and those claiming under him, are not allowed to show any other intent. There is no exception in the deed." To this plaintiff excepted.

There were numerous exceptions taken on the trial, but they are all substantially embraced in the exceptions to the above instructions.

"It is a well settled principle of common law that everything which is annexed to the freehold becomes part of the realty. Although, when the ownership of the land and of the chattel is vested in the same person, or when the owners of both concur in a common purpose, the presumption that a chattel is made part of the land by being affixed to it may be rebutted, yet the evidence must, as it would seem, be in writing, under the statute of frauds, or else consist of facts and circumstances of a nature to render a writing unnecessary, by giving birth to an equity or an equitable estoppel." *Elwes* v. *Mawes,* 2 Smith Leading Cases, note, p. 267, and numerous cases there cited.

The witness for plaintiff had testified that the shelter over engine and boiler was "planked up on each side and length, and planked up and down, open for belt to pass to work in the house; house covered with boards two feet long, nailed on," and that saw-mill was put down in usual manner. It was impossible for purchaser of such property to remove it without disturbing the freehold by tearing up the soil, or removing in part, at least, the building erected over the engine and boiler, and becoming a trespasser. The authori-

ties are uniform that property, such as above, affixed and used as described by plaintiff's witnesses, as well as by defendants', were fixtures. *Latham* v. *Blakely,* 70 N. C., 368; *Bond* v. *Coke,* 71 N. C., 97; *Treadway* v. *Sharon,* 9 Nev., 37; *Pea* v. *Pea,* 35 Ind., 387; *VanNess* v. *Packard,* 2 Pet., 137; *Bryan* v. *Lawrence,* 5 Jones, 337; certainly as between vendor and vendee, *McCreary* v. *Osborne,* 9 Cal., 119; Tyler on Fixtures, 519.

There are cases, arising generally between landlord and tenant, when the intent with which the articles were affixed to the freehold is a material inquiry. But those cases have no application here. As between landlord and tenant, if it appear that articles of personal property affixed to the freehold were so placed for the better temporary use of the realty, they may be treated as " trade fixtures." The intent with which they were so placed, then, becomes material. *Railroad* v. *Deal,* 90 N. C., 110. But as between vendor and vendee, the common law that articles of personalty affixed to the freehold are a part of the realty, and pass by a conveyance of the latter, is enforced in full vigor.

In *Bond* v. *Coke, supra,* BYNUM, J., says: " The deed, in our case, containing no exception of the gin and press, the legal effect of it is to pass them to the defendant, and no parol evidence to the contrary is admissible. The exception of them at the sale (as there alleged) being an agreement touching the sale of interest in lands, the statute of frauds requires it to be in writing. And even if the agreement reserving the gin and press had been in writing, it could only be set up by a bill in equity to reform the deed, on the ground of accident or mistake in the draughtsman." And in same case: " Personal chattels which have become fixtures are incorporated in and are a part of the land, as much so as a house or tree, until an *actual* severance, and, therefore, a deed conveying the land without excepting therein the fixtures, has

the legal effect of passing the gin or press, which are part and parcel of the land."

In *Moore* v. *Valentine*, 77 N. C., 188, PEARSON, C. J., says: "A steam-engine annexed to the soil and used as a part of the freehold becomes a part of the land, and cannot be severed (even by a tenant) except in special cases."

In *Bryan* v. *Lawrence*, 5 Jones, 337, it is held that rough plank put in a gin-house to spread cotton-seed upon, though not nailed down, passed, as a fixture, with the land.    But it is needless to multiply cases, or go into the nice learning as to what, in dubious cases, are or are not fixtures.    Sufficient to say that the articles here, placed and used as they were, are clearly fixtures.    The rules which, notwithstanding that fact, would entitle a tenant to remove them as trade fixtures by showing the intent or purpose with which they are affixed, are not competent, as between vendor and vendee, to vary a deed conveying the land without reserving them. We think, therefore, that the instructions complained of are correct.    The plaintiffs, who bought under execution against Green, can have no higher or better right than he had, and he could not be allowed, as against defendants, to show that property so affixed and used with the freehold was not intended by him to be fixtures, nor that he did not intend to include them in the deed, without the allegation of fraud or mistake."

After the jury had retired for their deliberations, and had been out for a long time, the jury sent the officer in charge to the presiding Judge to ask him to come to the court-room, and at their bequest he went.    It was late at night. The jury asked for further instructions.    Said they could not agree.    The presiding Judge inquired if the parties were in Court.    They were not then.    Then the presiding Judge inquired for the counsel, and was informed by the officers of the Court that they did not know where one of them was to be found, and that the other lived in the city some distance from the court-house.

HORNE *v.* SMITH.

The weather was inclement, and the presiding Judge desired to relieve the jury, and he did, in the absence of plaintiff and his attorneys, give further instructions, reiterating orally the substance of the instructions already given, about as follows:

"If the jury shall find that the engine and boiler and saw-mill were located, in the manner described by the witnesses, on the land of C. J. Green, at the time of the execution of the deed in trust to J. A. Long, the title passed from Green to Long, and by Long's deed to the defendants, and in that case they should find for the defendants."

And plaintiff excepts to the charge thus given, and also excepts that it was given in the absence of plaintiff and his counsel.

This charge is but a statement in a succinct form of what had been given before.

As we have said, property so affixed and used as here, clearly falls within the rules which constitute a fixture. Not coming within the exception above stated, which might take it out of the rule, this instruction was entirely correct, and might have been given earlier. The exception as to giving the instruction asked by the jury in the absence of plaintiff and his counsel, was properly abandoned in this Court. The instruction being set out, the Court can see that the defendant was not prejudiced. The propriety of taking such a course must always be left largely to the discretion of the presiding Judge. *State* v. *Jones*, 91 N. C., 654. In this case the discretion was in no wise abused. The appellee did not file specific exceptions to appellant's statement of case on appeal, but in lieu thereof served a counter-case. This has been held a compliance with the statute. *State* v. *Gooch*, 94 N. C., 982. It is very usual practice, and is often the most practicable mode of presenting the appellee's objections.

                                    Judgment affirmed.