STATE v. CROOK.

(Filed April 28, 1903.)

1. LANDLORD AND TENANT—*Subrenting—Liens—Removal of Crops—Aider and Abetter—The Code, Secs. 1754, 1755 and 1759—Crops.*

If a tenant aids and abets a subtenant in removing a crop, before paying the lien of the landlord, he is guilty of a misdemeanor.

2. COSTS—*Appeal—Case on Appeal — Judgment — Clerks of Superior Court.*

Where a clerk of a superior court fails to send up a judgment in the transcript on appeal, the supreme court may refuse to allow him the costs for making and sending up the same.

3. LANDLORD AND TENANT—*Crops—The Code, Sec. 1754.*

Hay is ordinarily embraced in the word "crop" as used in Sec. 1754 of The Code. But not, it seems, when it is merely a spontaneous growth as crab grass, sprung up after another crop is housed.

INDICTMENT against J. W. Crook, heard by Judge *W. S. O'B. Robinson* and a jury, at July Term, 1902 of the Superior Court of UNION County. From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney General,* for the State.
*Redwine & Stack,* for the defendant.

CLARK, C. J.   Indictment for removing crop under The Code, Sec. 1759. There was no conflict of evidence that the

rent agreed was a 450 pounds bale of lint cotton, that the cotton land was sub-rented by the defendant to one Bogan, that the defendant rented the land mainly for the meadow which he himself mowed, and that he carried off the hay therefrom, and that the cotton was removed by Bogan; that no rent has been paid and no notice of removal was given. Bogan testified that he removed the cotton by order of the defendant and the landlord testified that he never gave any consent to the removal of any part of the crop and on the contrary notified the defendant not to remove anything until the rent was paid. The defendant testified he did not tell Bogan to remove the cotton and that the landlord agreed before hand he might remove the cotton.

The court instructed the jury among other things that if they should find from the evidence that the defendant removed the hay or the cotton from the land without giving the landlord or his agents or assigns five days notice and without the consent of the landlord or his assigns and before discharging all the liens held by the landlord or his assigns, or if he aided and abetted any one else in so removing the crop from the land then he would be guilty. The court requested the jury that if they should find the defendant guilty at all under the charge of the court they would say in returning their verdict, whether they found him guilty of removing the hay or the cotton or whether they found him guilty of removing both hay and cotton. The jury returned a verdict of guilty of removing both the hay and the cotton. The defendant was fined five dollars and appealed.

The defendant excepted to the charge that the defendant would be guilty if he aided or abetted the sub-tenant in removing the cotton from the land. In this there was no error, for sub-renting did not release the landlord's lien upon the cotton. *Montague v. Mial,* 89 N. C., 137; *Moore v. Faison,* 97 N. C., 322. The intent in making the removal was im-

material, *State v. Williams,* 106 N. C., 646, and there is no exception on that ground. The jury having found the defendant guilty of unlawfully removing the cotton, even if there had been error as to the charge for removing the hay it would have been harmless error. But as the matter is one of considerable interest to those engaged in agriculture whether as landlords or tenants, that part of the case is also considered by us.

We pass by as needing no comment, the refusal to charge that there was no evidence, and come to the two remaining exceptions. First that the court refused to charge, as requested, "hay not being a cultivated crop, if the jury should find that the defendant did not remove any article, but the hay, your verdict should be not guilty." This was properly refused both because it ignored the fact that if the landlord directed the tenant to remove the cotton the jury could not find "not guilty", and because it is not true as a proposition either of law or fact that "Hay is not a cultivated crop." By the census of 1900 it appears that the value of the hay crop of this country exceeds by more than $100,000,000 the total value of our cotton crop and notwithstanding the large yield from the vast unsown prairies of the west, that more than three fourths of the hay crop is raised on cultivated land. The same census shows that six out of every seven tons of hay cut in this State are cultivated grass, only one-seventh being natural grass. Hay is not cultivated like cotton, any more than wheat is cultivated in the sense that corn is, but the court could not therefore lay down the proposition that either wheat or hay is "not a cultivated crop."

The other exception is that the court charged that "grass was subject to the landlord's lien and that the defendant would be guilty if he removed the hay from the land." There is no presumption and no evidence that this was uncultivated hay and the presumption of law is that the proceedings below

were correct.   Neither the word "meadow" nor the word "hay" *ex vi termini* import that this was an unsown meadow or that it was natural grass.   Indeed the general usage is that both rather indicate cultivation than the contrary.   In *Reg. v. Good,* 17 Ont., 725, it is said that the word "hay" does not import whether it was hay from natural grass or from grass sown and cultivated, and from the census, as above stated it appears that the great bulk of hay is in fact cultivated grass. As to "meadow" John Milton, that great master of our English tongue, understood its ordinary meaning to be a cultivated and tended grass plot, for in *L'Allegro,* he speaks of

"Meadows *trim,* with daisies pied"

and the law writers take the same view.   Black's Law Dictionary defines "meadow" as "a tract of low or level land producing grass, which is mowed for hay, Webster."   In *Barrows v. McDarmott,* 73 Me., at p. 452, the court held that the word "meadow" in the absence of evidence, means cultivated land growing grass sowed thereon.

But take it that the evidence showed that this was hay mown on a natural meadow, the landlord's lien clearly attached, both within the language and intent of the statute. It would be very singular if it were not so when the defendant testified that he rented the land and told the landlord so, mainly for the purpose of mowing the hay on this meadow. It was the "crop" he had in anticipation.   That the rent was to be paid in cotton did not release the lien given by the statute (The Code, Sec. 1754) "on any and all crops raised on said lands" any more than if the rent had been payable in money. The words "crop raised", means simply the crop grown or gathered during the year.   The word "raised" appears nowhere else in that section, nor in Section 1755 nor in succeeding sections, only the word "crop" being used.   The legislature had in mind no distinction between *fructus industriales* and *fructus naturales* and there was no need of any.

STATE *v.* CROOK.

The word crop covers both, says 8 Am. & Eng. Enc., 302. Webster defines "crop—that which is cropped, cut or gathered in a single season." In *Goodrich v. Stevens,* 5 (Lans. N. Y.), 231, the court says "A crop is primarily some *product of the soil* gathered during a single year." And in *Emerson v. Hedrick,* 42 Ark., 265, it is held that wild prairie grass when cut is a "product" which is subject to the laborer's lien for moving it.

In 8 Am. & Eng. Enc., 302, it is said that crops are divided into two kinds, *Fructus industriales* and *fructus naturales,* the material difference being that the latter are the part of the crop which does not go to the outgoing tenant as "emblements", nor to the personal representative, as against the heir. This division is one made in favor of the landlord and not against him. Our statute gives the landlord a lien for his rent "on any and all crops," that is on all that is "cropped, cut or gathered" in that season from his land, and there can be no rule of construction which would deprive him of a lien on that very part of the crop which by reason of public policy has always been held so closely vested in the landlord that the tenant can neither claim them as emblements, nor the personal representative. See Black's Law Dict. "Emblements", and Bouvier, ditto. In *Reiff v. Reiff,* 64 Pa. St., 134, it was held in favor of the land owner, that when tenant for life died during the year, the grass uncut, even when cultivated grass and ready for cutting, went to the owner of the reversion, and not as emblements to the lessees of the land, the court adding "The learned judge in the court below is a practical farmer, thoroughly acquainted with the established usages of our State, and we have no hesitation in agreeing with him that this crop of hay was not emblements and belonged to the executors of the testator (the landlord)". The cases cited by defendant's counsel, *Brittain v. McKay,* 23 N. C., 265; 35 Am. Dec., 738; *Flynt v. Conrad,* 61 N. C., 190;

STATE *v.* CROOK.

93 Am. Dec., 588; *Walton v. Jordan,* 65 N. C., at p. 172 and
*Bond v. Cooke,* 71 N. C., 100, so far as they apply at all are
directly against him in that they hold that the *fructus nat-
urales* inhere in the owner of the land, the tenant or personal
representative having a claim only on the *fructus industriales.*
The distinction however, has no bearing here as the law says,
and plainly intends, that what crop a tenant raises, gathers,
or gets in any way out of the land is subject to the lien of
the landlord till his rent is paid, and the tenant is forbidden
to remove any part thereof without payment of the rent,
unless there is notice to the landlord and his consent to the
removal.

The landlord's lien attaches to all the crop, and hence
applies to hay whether grown from natural or cultivated
grass.

Nothing in this opinion has reference to an ordinary grass,
or hay patch, the spontaneous growth of the soil, as a volun-
teer stand of crab grass for *that state of facts is not presented.*
On the contrary, the evidence of the defendant and of the
prosecutor concurred, as above set out, that the land was rent-
ed by the defendant chiefly for the purpose of mowing this
meadow and that this was stated when the land was rented.

There was a failure at first to send up the judgment in the
transcript, but instead of dismissing the appeal, as might
have been done (*Rosenthal v. Roberson,* 114 N. C., 594;
*State v. Hazell,* 95 N. C., 623, and other cases cited in Clark's
Code—3rd Ed., p. 734), the court *ex mero motu* sent down
a *certiorari* to obtain it, as was done in *Foster v. Hackett,*
112 N. C., 556, and other cases.

In *State v. Cameron,* 122 N. C., 1074, by reason of the
failure of the clerk to send up, as in this case, an important
part of the record, it was ordered that he should be "allowed
no costs for the making and sending up the transcript of the
record," the court saying: "The omission to send up that

part of the record is too grave a matter to be passed over by this court." The same order of disallowance is made in this case. The Constitution, Art. IV, Sec. 8, gives this court general supervision and control of proceedings in the lower courts.

No Error.

MONTGOMERY, J., concurring:—I cannot concur in that part of the opinion of the court where it is held that the ordinary grass or hay patch, the natural and spontaneous growth of the soil on the rented premises is embraced in the word "crops" in Section 1754 of The Code, unless it be shown that such was a part of the rental consideration if the rent was to be paid in money, or unless the tenant was by the contract, required to cut the grass or hay and deliver a part of the same to the landlord as rent. The criminal law has already been invoked by legislation, as a redress for civil injuries growing out of this subject as far as it ought to go, in my opinion, and I, as a judge, am not willing to extend its jurisdiction. Otherwise I concur in the opinion.

WALKER and CONNOR, J. J. concur in the concurring opinion of Montgomery, J.

DOUGLAS, J., concurring:—I concur in the opinion of the court understanding that it applies only to *regular* meadows or to crops such as clover or cultivated grasses. In the absence of contract, or of such established usage as would raise an implied contract in law, I cannot suppose that a mere volunteer stand of crab-grass, for instance, that should happen to grow during an unusually wet season, could possibly come within the scope of this opinion.