## Gentry v. Alexander.

November 1, 1949.

C. E. Rankin for appellants.

I. C. James for appellee.

JUDGE HELM—Affirming.

This is an action for a declaration of rights.

Mrs. Bernice VanArsdall died April 12, 1949, the owner of a life estate in a farm of 246 acres, about two miles east of Harrodsburg on the Lexington turnpike. Rufus VanArsdall, who was the husband of Bernice VanArsdall, owned this farm at the time of his death in 1920. The farm is described as having been in a high state of cultivation, "one of the show places of central Kentucky." Mrs. VanArsdall was a competent farm manager, and was operating this farm under a share-cropper arrangement with Ralph Knight. Crops of corn, wheat, tobacco, red clover and lespedeza were grown. Other parts of the land were kept in grass, such as blue grass, or orchard grass.

Appellant, in his brief, says: "The life tenant sowed something more than 100 acres in wheat in the fall of 1948, and it was growing on the farm at the date of her death. It went to her representative, without question, as an emblement." At the time of the life tenant's death, 30 acres of the tract was in red clover. The clover seed had been bought and sown by her in the spring of 1948. It had been clipped in the fall of 1948. Twelve acres had been sown in Korean lespedeza by the life tenant in the spring of 1948. The farm had a tobacco base of twelve and eight-tenths acres. The life tenant, through Ralph Knight, had prepared and sown a tobacco plant bed, between 1,000 and 1,200

square feet, sufficient for setting and resetting the base of twelve and eight-tenths acres. At the time of the life tenant's death, the tobacco plants in the bed were about the size of a dime, and had not been transplanted. At the time of the life tenant's death, the corn crop had not been planted.

The question before the trial court was: Were the clover, the lespedeza, and the tobacco plants, emblements within the meaning of KRS 395.350, which provides: "(1) All the emblements of the lands of a person dying after March 1 which are severed before the following December 31 shall be assets in the hands of his personal representative."

The word "emblements" is derived from an old French word "emblaement," modern French "emblaver," meaning to sow with wheat; "the profits of the land sown." The word is included in the term "fructus industriales." Fructus industriales, as distinguished from fructus naturales, are crops of the earth produced not spontaneously but by expense, labor and industry of man.

In 15 Am. Jur. 197, it is said: "* * * Attention in recent times, however, has been given to the modern methods of fruit culture and the assistance afforded nature in producing fruit and other products of bushes and trees, and the better rule now regards as 'fructus industiales' a growing crop which owes its existence in its final perfection and abundance to the care and cultivation of man, even though it may proceed from perennial roots."

Hops, although produced from perennial roots, have long been considered emblements, fructus industriales because of the care and industry required for their production.

In Twin Falls Bank & Trust Co. v. Weinberg et al., 44 Idaho 332, 257 P. 31, 33, 54 A. L. R. 1527, it is said: "It is common knowledge that apple and other fruit trees require annual pruning, spraying, and cultivation in order to produce marketable crops. We are of the opinion that an apple crop is clearly fructus industriales, * * *."

In N Bar N Land & Livestock Co. v. Taylor, 94

Mont. 350, 22 P. 2d 313, it was held that a crop of alfalfa, a clover, a perennial growing from roots in the ground and requiring industry of man to bring it to maturity, is fructus industriales.

In Tiffany, Real Property, Vol. 2, p. 543, it is said: "It seems, however, that artificial grasses, such as clover, sainfoin and the like, may be taken as emblements."

In State v. Crook, 132 N. C. 1053, 44 S. E. 32, 33, the court said: "By the census of 1900 it appears that the value of the hay crop of this country exceeds by more than $100,000,000 the total value of our cotton crop, and, notwithstanding the large yield from the vast unsown prairies of the West, that more than three-fourths of the hay crop is raised on cultivated land. The same census shows that six out of every seven tons of hay cut in this state are cultivated grass, only one-seventh being natural grass. Hay is not cultivated like cotton, any more than wheat is cultivated in the sense that corn is, but the court could not therefore lay down the proposition that either wheat or hay is 'not a cultivated crop.' "

The trial court, in a well-reasoned opinion, said: "Do the crops of clover and lespedeza, or either, sown by the life tenant, plaintiff's decedent, in the spring of 1948, belong to her estate or go to the remaindermen, she having died in April, 1949? Does the 1949 tobacco crop grown from the plants she seeded in the bed for that purpose in the spring of 1949, and still in the bed at the time of her death, belong to her estate or the remaindermen? These are the questions for decision.

"KRS 395.350 provides: * * *

"This statute fixes the respective rights of the estate of the life tenant and of the remaindermen as to the emblements. * * * It has been the law of Kentucky practically ever since its formation as a State. Clore's Adm'r v. Clore (215 Ky. 532), 284 S. W. 385. But as to what is included in 'emblements,' the doctrine on that subject at Common Law must be consulted. The change in the Common Law rule about it that this statute makes relates to the time of the death, of the life tenant, * * *. At Common Law, the life tenant, or his lawful representative, was entitled to the annual crops raised by his labor. That in substance seems to have

been the rule. The date of that tenant's death did not, as it does now in this jurisdiction, affect this right of his representative. Blackstone, vol. 1, bk. 2, page 122; Kent, vol. IV, page 74; Bouvier's Law Dict., Baldwin's Edition, p. 345; American Law Institute, Restatement, Property, vol. I, sec. 121; Tiffany's Real Property, abridged edition, p. 401, sec. 408; Annotation to Re Mischke (136), Neb. (875, 287 N. W. 760), in 125 A. L. R. 280, collating texts and decisions on the rule, * * *.

"In 17 C. J., page 380, after noticing that crops are divided into two classes, fructus industriales and fructus naturales, * * * it is stated:

" 'The term "emblement" is synonymous with fructus industriales, * * *.'

"In discussing the distinction taken as between fructus naturales and fructus industriales, the text, on the same page, contains this statement:

" 'Formerly, in England, it was held that where the root or tree was perennial, living for a number of years, the fruit produced by it while growing was fructus naturales. But this doctrine is supported now by little authority and less reason; the correct test to apply is to ascertain whether the annual fruit is produced by annual labor of man, such as necessary manurance or other industry, * * *.

"There are but few decisions in this jurisdiction relating to the subject of emblements. * * *

"So our problem is whether under this doctrine of emblements the present crops are to be classified as emblements or as passing as part of the realty, and so far as concerns the clover and lespedeza, it is my conclusion that both are emblements, and belong to the estate of the life tenant; but as to the tobacco crop, the remaindermen are entitled to it. I shall discuss the other two crops first.

"As is apparent from the * * * authorities, the basic distinction between emblements and other products of the soil is, that the former are the result of the labor and initiative of the tenant, while the latter are spontaneously produced by nature. The purpose of the crop must be considered too, * * *. Was it for the enhancement of the value of the land, or was it really for

the benefit of the tenant, though incidentally adding to the value of the land? Both these crops were sown by the tenant; neither would have been produced spontaneously. And there can hardly be any question that the tenant's purpose in sowing them was one chiefly for her own benefit, for the returns she would probably obtain from them. The contrast between these crops and growing things like trees, perennial bushes and shrubs, and natural grasses, classic instances of fructus naturales, demonstrates to my mind that the former are of an entirely different kind, and ought not to be classed in the same group as the last. Indeed, Sparrow v. Pond (49 Minn. 412), 52 N. W. 36, 16 L. R. A. 103, calls attention to the fact that the word 'crops' has long since acquired practically the same meaning in law as 'emblements.'

"I have not overlooked what the court said in the course of its opinion in Craddock v. Riddlesbarger, 32 Ky. 205, * * * to the effect that certain growing products are to be treated as incidents to the land, and not as emblements, naming clover as one of them. But the context shows, I think, that the court was referring to clover as a natural or spontaneous product, not to the sown variety. The decision must be understood in its period of time. At that date, in this State, the cultivated or sown crops were practically all corn and wheat. The hay crops were those of the wild or natural grasses. But today, * * * by far the greater part of the hay crops is that which has been sown.

"The remaindermen stress that neither clover nor lespedeza required any cultivation. But that is the case also with wheat, and with alfalfa, which comes under the head of emblements. N Bar N Land & Livestock Co. v. Taylor, 94 Mont. 350, 22 P. 2d 213. It is urged that these crops are not emblements, because they might not have been severed, that instead of harvesting them, the tenant might have turned under the clover and pastured the lespedeza. But under good farming practice both crops are regularly sown for being cut and harvested. In this connection, attention is called to University of Kentucky bulletin, Circular No. 407, entitled Lespedeza in Kentucky, showing what excellent hay Korean Lespedeza makes. It was up to the tenant to decide what she would do with these crops. There is

nothing to indicate she did not plan to harvest both, and the presumption may not fairly be indulged that she would not have done so had she lived.

"The remaindermen next contend that these crops are not to be classed as emblements because the clover could not have been severed within a year from its sowing, and the lespedeza was not sown by the tenant, but came from the fallen seed of the sown crop. Nevertheless, it is certainly a crop produced through the act of the tenant in sowing the seed, and so planned by her, for all practical purposes as much so as if she had scattered the seed. It is not an incident of the land; not a spontaneous or natural growth; not a long range product for the enhancement of the value of the land; but one produced by the planning and industry of the tenant, for her own profit. In none of these respects has the nature of the crop been affected because grown from the seed fallen from the sown lespedeza. As to the claim a crop must have been seeded not more than 12 months before its harvest, I have not found any such requirement a part of the test as to what are emblements. True, in earlier times the doctrine was concerned principally with wheat, corn and other grain crops, all crops maturing within 12 months from being sown, and the language of those opinions is descriptive of the doctrine as presented by those crops. But I do not understand that it was intended to limit the application of the doctrine to just those crops that matured within 12 months. If that be the case, then the essential nature of emblements, as distinguished from the other products of the earth, apparent from the study of the authorities * * *, means one thing when we are considering wheat and corn, and other like crops, but has an entirely different meaning if we are considering those that take more than 12 months to mature. The Pennsylvania decision, Reif (f) v. Reif(f), 64 Pa. 134, relied upon by defendants, in refusing to consider clover as within the class of emblements, stresses that the representative of the deceased life tenant dying just after the sowing of the seed would have two years thereafter to harvest the crop, to the serious disadvantage of the remainderman's possession. But that is certainly not pertinent objection in this jurisdiction, for under the statute, KRS 395.350, the crop must be severed before December 31 of the year of the tenant's death. * * *

"As the tobacco crop had not been set out in the field, but only sowed in the bed, it does not come within the group of emblements. In Restatement of the Law, Property, Vol. I, page 382, the rule is stated:

"'As to crops which have to be placed in the ground each year, the privilege described in the rule stated in this Section (right of life tenant or his representative to crops) exists only when the crop is placed in the ground before the occurrence of the event which ends the estate for life. It is immaterial how much effort of another sort may have been expended on the land by the person in possession. If the crop is placed in the ground the privilege exists although the sowing or planting was done hurriedly, and at a time when the end of the measuring life was imminent.'

"I am unable to agree with plaintiff's contention that plants in the bed should be given the same effect as plants finally set in the field. The plants in the bed were but one step in preparation for starting the crop, just as plowing the field would be another, and harrowing and dragging is another. But the quotation from the Restatement clearly shows that preparation alone, no matter how extensive, is not enough to create the privilege. The crop must have been started to satisfy this requirement, and there is plenty of reason for saying that it is not started until seeded or planted in the field. In any event, that is the general doctrine on this subject.

"But while the plants growing in the bed do not justify treating the later crop as of the class of emblements, they themselves should be treated as personalty, like nursery stock. See as to this, 17 C. J., p. 380, sec. 4. For this reason, plaintiff should have them, or their value."

The findings of the trial court were:

"(1) The crop of clover and the crop of lespedeza are emblements belonging to the estate of the life tenant;

"(2) The tobacco crop is not emblements, and belongs to the remaindermen;

"(3) The tobacco plants in the bed are personalty and belong to the estate of the life tenant;

352

"(4) The pleadings concede it to be the duty of the life tenant to pay the 1949 taxes, and it is so adjudged and declared."

The judgment concluded: "Both the plaintiff and the defendants object, except and pray an appeal to the Court of Appeals, which is granted."

Appellee, plaintiff below, has not prosecuted any appeal or cross-appeal in this court. Therefore, the only questions we have are: Did the trial court correctly find that the crop of clover and the crop of lespedeza were emblements belonging to the estate of the life tenant, and were the tobacco plants in the beds personalty belonging to the estate of life tenant?

We believe the trial court reached the correct conclusion. The judgment of the circuit court is affirmed.