## Reiff *et al. versus* Reiff.

1. Tenant for life leased the premises and died during the year, *Held*, that uncut grass belonged to the owner of the reversion and not to the lessees as emblements.

2. *Emblements* are corn and other growth which are produced annually : not spontaneously, but by labor and industry.

3. Such productions are *fructus industriales*.

4. Growing grass, even if produced from seed and ready to be cut for hay is not emblements, because the improvement is not distinguishable from natural product, although it be increased by cultivation.

January 19th 1870.   Before THOMPSON, C. J., READ, SHARS-WOOD and WILLIAMS, JJ.   AGNEW J., at Nisi Prius.

Error to the Court of Common Pleas of *Montgomery county :* No. 195, to January Term 1870.

This was an action of trespass commenced August 10th 1868, by Elizabeth P. Reiff, Letitia P. Reiff and Susanna P. Reiff against Charles P. Reiff.

The whole facts in the case appear in the following charge of Judge Chapman, before whom the case was tried, November 17th 1869.

"This is an action of trespass, brought to recover damages for cutting and carrying away a quantity of grass, growing upon a tract of about 152 acres of land, which had been leased to the plaintiffs by Mary Reiff, their mother, and widow of John Reiff, deceased.

"It appears that John Reiff, by his last will and testament, proved the 3d of April 1855, devised to his wife, during her life, the premises mentioned, and that she leased the same to her daughters, the plaintiffs.   The first lease is dated the 3d of November 1866, the second the 1st of April 1867, and the third and last, the 25th of February 1868, each for one year.   The last was to expire on the 1st of April 1869.   The widow died on the 15th of June, 1868.   At the time of her death, there were standing, uncut, on the premises, a quantity of mixed timothy and clover grass, a quantity of grass, part meadow and part timothy, and a quantity of timothy exclusively.   This was sold by the executors of John Reiff; the defendant became the purchaser and entered on the premises by authority of the executors, and cut and hauled it away.   The plaintiffs allege the defendant was a trespasser, and is liable to answer in damages, for entering on the premises without their permission and cutting and carrying away the grass.

"The material question in this case is, to whom did the grass belong?   It must be admitted that the lessees of the widow, could acquire no greater right than she had.   If this grass, upon her death, would have passed under the will, no contract made by her, could enlarge her rights.   Otherwise the lessees might have maintained their right to the occupancy of the premises, until the end

[Reiff *v.* Reiff.]

of the term. This could not be, for it would be repugnant to the will. The devise was to her for life. Her death terminated her estate. But it is contended certain emblements would have passed to her estate, and to these her lessees are entitled. This is true; yet it by no means follows, that clover, timothy and meadow grass come within the description of emblements to which her estate or her lessees are entitled. It may be admitted, that Indian corn, wheat, rye, oats, buckwheat and potatoes, and even hemp, Hungarian grass, flax and millet are included among the emblements that do not pass to the remainder-man, but these are all annual products; when cut the root dies. It is not so with clover, timothy or meadow grass, the latter especially, which is entirely spontaneous. Generally, neither clover nor timothy is a principal crop, being usually sown with wheat or rye, and with a view to bring the land into a condition to produce hay or pasture, according to the approved system of rotation. Neither clover nor timothy mature the first year, clover does not until the second summer, and timothy not until the third. If the tenant for life dies just after the grain harvest, may his representatives or lessees enter on the premises, one, two or three years thereafter, and cut the grass, or pasture the fields? If so, when is the remainder-man to get the exclusive possession of the land? The enjoyment of his rights, under the will, would be postponed far beyond the period fixed by it; and the tenant for life or his lessee could, by a peculiar system of cultivation, produce the delay. It is urged, as the tenants here sowed the clover and timothy seed, they should not be deprived of the fruits of their labor, but it may be answered, that during the previous year, they had the benefit of the pasture, after the grain was cut and removed from the fields. For it will be remembered the crop of grass, cut by the defendant, was not sowed the last year they occupied the premises, but during the first or second year of their tenancy."

" The custom of the country which allows to a tenant the way-going crop, is not applicable to this case,—still there is some analogy between the two relations, and some aid may be derived from the law governing the relation of landlord and tenant. It has never been pretended that a tenant from year to year had a right to anything more than the crop of grain sown by him; to enlarge the right to the crop of grass produced a year or two after, from seed sown at the same time, would comport with no custom or law, but would be opposed to well-established rules of good husbandry, and convert what may have been intended as a lease for a year, into an indefinite term, for it is well known that timothy and clover are perennial grasses, and will spring from the root for several successive years. If the tenant is entitled to the first yield of grass, why not to the second, third and fourth, or until the root is exhausted?

[Reiff *v.* Reiff.]

" The industry of the counsel has not been rewarded by much law bearing upon this case, and we are therefore compelled to adopt such rules as are suggested by reason and reflection.

" It is the opinion of the court that the growing crops of the particular grass cut and hauled away by the defendant, passed, by the will of the testator, along with the land, and the executors had the right to sell them and confer upon the purchaser the right to cut and haul them away, or to house them on the premises. If you believe the evidence, the verdict must be for the defendant."

The verdict was for defendant.

The case was removed by the plaintiff to the Supreme Court, where in a number of specifications, the charge of the court was assigned for error.

*D. H. Mulvany* and *R. C. McMurtrie*, for plaintiffs in error.— Emblements are given to compensate the tenant for his labor, &c., and also for the encouragement of husbandry : Woodfall's Landlord and Tenant 501. The test is whether the crop is grown in the year in which the tenant's interest is determined. Clover and other grasses which are annually removed are emblements : 1 Williams on Ex'rs. 633; Burn's Ecc'l. Law 299; 2 Bl. Com. by Sharswood 122, n. 3. Although they may be from old roots : Latham *v.* Atwood, Croke Car. 515; Frank *v.* Harrington, 36 Barb. 415. It is essential to the interest of agriculture that where a person is in under a tenancy which may expire on an uncertain event beyond his control, the determination of the tenancy should not prevent him from reaping what he has sown : Bittinger *v.* Baker, 5 Casey 66. The common law in relation to the rights of a life-tenant have often been departed from here : Neel *v.* Neel, 7 Harris 323; Irwin *v.* Covode, 12 Id. 162; Lynn's Appeal, 7 Casey 44; Williard *v.* Williard, 6 P. F. Smith 120; Hastings *v.* C;runckleton, 3 Yeates 261.

*G. R. Fox*, for defendant in error, cited : Graves *v.* Weld, 2 Nev. & Mann. 725, s. c. 5 B. & Ad. 105; Co. Litt. 55, 56; 1 Rol. Ab. 728, 1, 10.

The opinion of the court was delivered, January 31st 1870, by

READ, J.—The plaintiffs in error were the lessees of a farm of 152 acres, from their mother a widow, who had a life estate in it under the will of her husband their father. They were annual lessees from the 1st April 1866, 1867 and 1868, the widow dying on the 15th June 1868. At the time of her death, there was standing uncut on the premises, a quantity of mixed timothy and clover grass, a quantity of grass part meadow and part timothy, and a quantity of timothy exclusively. The question

was, was this grass *emblements*, belonging to the tenants of the deceased owner of the life-estate. The vegetable chattels called *emblements* are the corn and other growth of the earth which are produced annually, not spontaneously but by labor and industry and thence are called *fructus industriales*. The growing crop of grass, even if grown from seed, and though ready to be cut for hay, cannot be taken as emblements: because as it is said the improvement is not distinguishable from what is natural product, although it may be increased by cultivation (1 Williams on Executors 670, 672).

The learned judge in the court below is a practical farmer, throughly acquainted with the established usages of our state, and we have no hesitation in agreeing with him that this crop of hay was not emblements, and belonged to the executors of the testator.                              Judgment affirmed.