J. C. HENDRIXSON, in error, *v.* P. H. CARDWELL.

LANDLORD AND TENANT.  *Emblements.*  A tenant occupying premises under a lease not for a definite period, sowed a crop of oats in November, 1872, harvested them in 1873, and plowed in the stubble to get a new crop.  His tenancy was terminated the first of September, 1873, without objection or reservation by him.  *Held,* that he was not entitled to enter and gather the crop of oats in June, 1874.

FROM KNOX.

Appeal from the Circuit Court.    E. T. HALL, Judge.

W. A. HENDERSON for plaintiff.

L. C. HOUK and T. J. WEBB for defendant.

McFARLAND, J., delivered the opinion of the court.

This was an action of replevin brought by Cardwell to recover a lot of oats. The facts deposed to by the plaintiff, and J. B. Hoxsie, witness for the defendant, are, that Hoxie, as agent of Dr. Pearne, rented to the plaintiff certain premises near Knoxville, being a house and about twenty acres of land. The plaintiff says he rented " at twelve dollars and a half a month, payable in advance, but by the year, in the month of March, 1872, and remained until the 1st of November, 1873. I expected to keep the place four or five years, as Dr. Pearne was absent from the country, and I expected to keep it until his return." Hoxsie says " he rented the place to the plaintiff at twelve dollars and fifty cents per month, the renting was not by the year or even for any definite time."

In November, 1872, the plaintiff proves that he sowed on the land a crop of English winter oats and harvested the same in June, 1873, when he plowed in the *stubble* so as to get another crop, which was the custom, and the crop was growing when he left the place, November 1st, 1873. In June after plaintiff left, defendant cut and harvested the oats for which the suit is brought.

Hoxsie was offered better terms by the defendant, who proposed to take the premises for a longer lease, and this was the reason the plaintiff's tenancy was terminated. The plaintiff gave up the premises without objection and made no mention of the growing oats crop, and none was made by Hoxsie upon leav-

ing to the defendant.    The question is, do these facts entitle the plaintiff to a recovery?

The argument for the plaintiff is, that he was a tenant at will, and his term having been terminated by his *landlord*, he was entitled to the growing crop as emblements and free egress, etc., to cut and carry the crops away.    The general principle is not doubted. See 2d Blackstone, p. 126.    But if the plaintiff was a tenant from year to year, as his own testimony indicates, he would not be entitled to the emblements after the year which terminated his tenancy.    Though, as the judge charged in this case, if the landlord suffered the tenant to hold over after the termination of the first year, the presumption would be that the tenancy was to continue for another year, and if the landlord terminated the tenancy before the expiration of the second year, the tenant should have to the end of the year to remove his crops, but we think not beyond the end of the year, as is to be implied from the judge's charge.    For in a case of tenancy from year to year, where the term depends upon a certainty, if the tenant holds to the end of the year, he cannot have emblements unless specially reserved.    Broom's Legal Maxims, p. 396.    And so, if his term is by the landlord wrongfully terminated before the year, his right to emblements could not extend beyond the year, his right in this respect could not be increased by the termination of his tenancy before the end of the year.

But another question is, whether the crop is of that character secured to tenants in such cases.

Hendrickson *v.* Cardwell.

When the tenancy is of uncertain duration and is terminated by the landlord after the crop is sown, but before it is severed from the freehold, the tenant or his representative shall be entitled to one crop of that species only, which ordinarily repays the labor by which it is produced within the year within which that labor is bestowed, though the crop may in extraordinary seasons be delayed beyond that period. But he is not entitled to all the fruits of his labor, as such right might be extended to things of a more permanent nature, such as trees or more crops than one, since the cultivator very often looks for a compensation for his capital and labor in the produce of successive years.    Such is the law, as stated in Broom's Legal Maxims, pp. 236 and 394.

The crop claimed in this case is, ordinarily, an annual crop, but the plaintiff harvested the first year's product of the sowing, and claims a second year's crop of the same sowing.    True, he bestowed additional labor to produce this second crop, but as we understand the rule as above stated, it goes no farther than to give to the tenant the benefit of the law of emblements, so as to secure to him the benefit of the annual crop sown by him before the termination of his term.    If this second crop of oats had grown without labor by the plaintiff, he would not have been entitled to . it after the expiration of his term, as he had already harvested the crop sown by him, and the additional labor bestowed upon it does not change the result.    The crop claimed matured in 1874, was sown in November, 1872.    Plowing in the stubble, we

think, is not equivalent to sowing another crop, though it produce the same result. The policy of the rule is the encouragement of the tenant. in the cultivation of the soil, and is satisfied by giving him, after the termination of his term, the proceeds of his annual crop sown by him.

Let the judgment be reversed.