MOCCASIN STATE BANK, RESPONDENT, *v.* WALDRON,
APPELLANT.

(No. 6,258.)

(Submitted February 13, 1928.  Decided February 28, 1928.)

[264 Pac. 940.]

*Real Property—Mortgages—Wrongful Use and Occupation—
Bankruptcy—Sale of Property—Title of Purchaser Dates
from Confirmation of Sale—Accrual of Action in Purchaser—
Time—Chattel Mortgages—Crops—Lien Attaches, When.*

Chattel Mortgages—Crops—Lien Attaches, When.
1. Since the lien of a mortgage on a crop to be grown attached
when the seed was planted, where such a mortgage was executed
and recorded more than four months prior to the time the mort-
gagor was adjudicated a bankrupt and the seed was planted long
before the adjudication, the lien related back to the date of the
mortgage and was valid as against the trustee in bankruptcy.

Same—Real Property—Damages for Use and Occupation—Crops—When
Chattel Mortgagee not Entitled to Possession of Land for Harvest-
ing Purposes.
2. A mortgage on growing crops does not operate as an encum-
brance on the land; hence where the mortgagee was merely ac-
corded the right under the mortgage, on default of the mortgagor,
to take possession of the crop when harvested, the contention of
defendant in an action by the purchaser of the premises at bank-
ruptcy sale to recover for the use and occupation of the land,
that he was entitled to take possession, care for and harvest the
crops is not maintainable.

Same—Purchase at Bankruptcy Sale—Title Does not Pass Until Con-
firmation.
3. A trustee in bankruptcy is entitled to the possession of the
bankrupt's property as of the date of the bankruptcy adjudica-
tion; on sale of the property by the trustee title does not pass
to the purchaser until confirmation, and the purchaser obtains
only such title as the bankrupt had at the time of the sale.

Same—Real Property—Wrongful Use and Occupation—Right of Action
in Purchaser at Bankruptcy Sale Accrues, When.
4. The value of the use and occupation of land is not an inci-
dent to the land which passes with a transfer of it; therefore
where a trustee in bankruptcy in selling land of the bankrupt
did not transfer to the purchaser a right of action against one
who had wrongfully occupied it from the date of the bankruptcy
adjudication until confirmation of the sale (see par. 3), the pur-

---

1. Mortgage liens as affected by bankruptcy proceedings, see note
in Ann. Cas. 1913E, 850.  See, also, 4 Cal. Jur. 80.
3. See 4 Cal. Jur. 59; 3 R. C. L. 231.

chaser's right of action against the occupant could not antedate the day the trustee's sale was confirmed.

Same—Real Property—Wrongful Use and Occupation—Damages Recoverable.

5. In an action to recover for the wrongful use and occupation of real property, plaintiff is entitled to recover damages for the entire time of such occupancy; hence where defendant admitted occupation, not only to the date of filing of the complaint but to the date on which answer was filed, plaintiff was entitled to compensation to the latter date.

---

[1]    Bankruptcy, 7 C. J., sec. 257, p. 158, n. 27.    Chattel Mortgages, 11 C. J., sec. 50, p. 442, n. 66; sec. 51, p. 443, n. 72.
[2]    Bankruptcy, 7 C. J., sec. 378, p. 242, n. 37.    Chattel Mortgages, 11 C. J., sec. 51, p. 444, n. 74.
[3]    Bankruptcy, 7 C. J., sec. 227, p. 136, n. 66; sec. 378, p. 242, n. 35.
[4]    Bankruptcy, 7 C. J., sec. 378, p. 242, n. 36.

*Appeal from District Court, Judith Basin County; John C. Huntoon, Judge.*

ACTION by the Moccasin State Bank against Jennie Waldron. From a judgment against defendant, she appeals. Reversed and remanded.

*Messrs. Cheadle & Cheadle,* for Appellant, submitted an original and a supplemental brief; *Mr. E. K. Cheadle* argued the cause orally.

*Mr. Oscar O. Mueller,* for Respondent, submitted a brief; *Mr. Ralph J. Anderson* argued the cause orally.

STATEMENT OF THE CASE BY THE JUSTICE DELIVERING THE OPINION.

On December 3, 1923, George F. Brown and Maude S. Brown, husband and wife, executed to Jennie Waldron a chattel mortgage to secure the payment of a promissory note of even date for $2,655, payable December 1, 1924, with interest from date at the rate of eight per cent per annum. The property mortgaged consisted of cattle, horses, lumber, farming implements, grain and "all crops of whatsoever kind, nature

---

5.    See 25 Cal. Jur. 438.

or description to be grown and harvested during the year 1924" upon lands described, some 600 acres. The mortgage contained a provision to the effect that when a crop, whether sown or to be sown, should be gathered or harvested, the mortgagee, in case of default, should be entitled to the immediate possession thereof with the right to transport and sell the same at the best price obtainable.

On May 7, 1924, upon their petition, George F. Brown and Maude S. Brown were adjudicated bankrupts and in due course a trustee of their estate was appointed.

In May, 1924, following the adjudication and by reason of condition broken, Mrs. Waldron authorized and directed the sheriff to foreclose the mortgage, which he proceeded to do. At the sale Mrs. Waldron bid in all of the mortgaged property for less than enough to satisfy the amount due her. At that time crops of grain and grass were growing upon the land. On July 19, 1924, pursuant to an order of court, the real estate was sold to the plaintiff, the sale being confirmed on July 21, 1924. On September 5, 1924, the plaintiff began this suit against the Browns and Mrs. Waldron.

Plaintiff alleged itself to be the owner of 600 acres of land, describing it, and that the plaintiff and its grantor and predecessor in interest, the trustee in bankruptcy, had been the owners of and entitled to the immediate possession of the premises ever since the seventh day of May, 1924; that ever since that day the defendants had wrongfully occupied the premises and were still continuing to do so; that the defendants had unlawfully appropriated to their own use and benefit "a certain crop of winter wheat consisting of about 70 acres more or less, about 140 acres of hay, about 20 acres of spring grain and all the pasturage on the land"; that the reasonable value of the rents and profits for the use and occupation of the premises and the value of the pasturage, produce, hay and grain so appropriated, after allowing reasonable compensation for the work and labor performed thereon, is the sum of $1,800; "that the plaintiff hereby waives the

tort for damages for the grain and hay so appropriated and for the pasturage and said crops as aforesaid, and sues for the value of the pasturage, hay and grain, the same being the rents, issues and profits of said premises and the reasonable use thereof in the sum of $1,800.'' Later the suit was discontinued as to the Browns but continued as to Mrs. Waldron.

She filed an answer in which she admitted the plaintiff to be the owner of the premises and that the plaintiff and its grantor, the trustee in bankruptcy, had been the owners of the premises since May 7, 1924, but denied that either the plaintiff or the trustee had ever been entitled to the possession of the same; alleged the execution of the chattel mortgage by the Browns to herself, the foreclosure of the mortgage, and her ownership of the crops, grain, hay and pasturage grown on the premises in the year 1924; alleged that she had employed the Browns to assist her in caring for, harvesting and removing the crops, and alleged that she had remained upon a portion of the premises for the purpose of caring for, threshing and removing the crops and not otherwise; asserted that she would remove the crops with all due diligence and as soon as practicable, and thereupon would voluntarily remove from the premises; denied that her possession of the premises, as stated, had injured the plaintiff in any amount.

The case was submitted to the court without a jury. It appeared that when the plaintiff began the action it caused the grain which had been threshed and the hay which had been cut and stacked to be attached, and that pursuant to a stipulation of counsel the hay was released from attachment and the wheat sold by the sheriff about October 8, 1924. When the attachment was made George F. Brown was in possession of the land. Some of the money received from the sale of the grain was retained by the sheriff and the remainder turned over to the defendant's attorney.

In an attempt to prove the value of the use and occupation of the premises the plaintiff, over the objection of the

defendant, offered evidence to the effect that in that section of the country it was customary for a tenant to render to his landlord one-third of the grain crop, delivered at the elevator, and one-half of the hay in stack.  The defendant offered evidence to show that, during the period from May 7 to September 5, 1924, the land had little rental value.

The court found that the plaintiff "at all times during the year 1924, and since on or about the 21st day of July, 1924, was the absolute owner" of the land described; that the defendant, through her agents and employees, occupied and "harvested and threshed off the premises for her own use and benefit" certain wheat of the value of $2,177.48, and hay of the reasonable value of $300; that "the rental value of lands in the vicinity of the premises hereinbefore described is determined by the crops raised off said premises, universally being entitled to one-third of the grain so raised, harvested and threshed, delivered in an elevator, and one-half of the hay in stack on the premises, and that the same constitutes and is a reasonable rental value for the premises"; and that the plaintiff was entitled to all the rents and profits from the said premises for the year 1924.

The court concluded "that the plaintiff at all times since on or about the 21st day of July, 1924, and during the whole of the year 1924, was the unqualified, fee simple owner of the premises described in said complaint and entitled to the possession thereof, and furthermore entitled to all the rights and privileges of its predecessor in interest, the trustee in bankruptcy"; and was entitled to judgment against the defendant in the sum of $743.70, with interest at eight per cent per annum from October 9, 1924.  Judgment was entered accordingly.  The defendant has appealed from the judgment.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

1. It is conceded that the controversy here is not over the crops but over the right of the plaintiff to recover a money

judgment for the use and occupation of the lands described in plaintiff's complaint.

No question has been raised as to the bona fides of the [1] chattel mortgage executed by the Browns to Waldron. "A mortgage may be given upon a growing crop or a crop to be grown, and the lien thereof continues after severance, whether remaining in its original state or threshed or otherwise prepared for market," but the lien attaches only to crops next maturing after the execution of the mortgage, by the express provisions of section 8290, Revised Codes 1921.

But counsel for plaintiff argues that defendant has failed to show that the chattel mortgage was a valid lien on the wheat harvested upon the premises. The bankruptcy of the mortgagors, he says, canceled the lien of the chattel mortgage on any crops planted within four months prior to the date the mortgagors were declared bankrupts. He seeks to fortify this argument by citing *Isbell* v. *Slette*, 52 Mont. 156, 155 Pac. 503, wherein it is said that the lien of a mortgage upon crops thereafter to be planted "cannot attach until the crops come into existence—until they are planted." Counsel overlooks the fact that he pleaded that the wheat crop consisted of 70 acres of winter, and 20 acres of spring wheat. But even if all the wheat crop had been planted in the spring it does not follow that the lien of the mortgage was not valid when it did attach, and it attached when the seed was planted. The crop was planted before the adjudication and within the express contemplation of the mortgage. The mortgage, valid in all respects, was executed and placed of record more than four months prior to the adjudication. In this situation the lien related to the date of the mortgage and was valid as to the trustee in bankruptcy. (*Thompson* v. *Fairbanks*, 75 Vt. 361, 104 Am. St. Rep. 899, 56 Atl. 11; affirmed 196 U. S. 516, 49 L. Ed. 577, 25 Sup. Ct. Rep. 306.)

The regularity of the sheriff's sale is not questioned and, [2] the mortgage being valid, it is not denied that defendant became the owner of the crops by purchase at the sheriff's

sale. The trustee did not assert the right (if he had such) to care for, harvest and sell the crops subject to the lien of the mortgage. He did not take any action with respect to them; he seems to have been content with the foreclosure and sale. This being so, counsel for defendant insist that defendant was entitled to take and keep possession of the lands, in so far as necessary, in order that the crops might be cared for and eventually harvested; consequently it is urged that the plaintiff has no cause of action. This argument cannot be maintained. The chattel mortgage did not operate as an encumbrance upon the land; it was an encumbrance upon the personal property and the crops therein mentioned only. (*Isbell* v. *Slette*, supra.) The mortgage did not by its terms purport to convey to the mortgagee any interest in the lands upon which the crops were growing or were to be grown. It went no further than to accord to the mortgagee the right to take possession of the crops when gathered or harvested.

The court's finding that the plaintiff is entitled to all the rents and profits from the premises for the year 1924 is erroneous, as is also its finding or conclusion that plaintiff is entitled to the value of the use and occupation thereof before its purchase of the lands was confirmed. There is no evidence in the record warranting any such finding or conclusion.

The trustee in bankruptcy was entitled to the possession [3] of the lands as of the date the Browns were adjudicated bankrupts, which was May 7, 1924. (Black on Bankruptcy, 3d ed., sec. 317; 7 C. J. 136.) From that date until the sale of the land to plaintiff was confirmed the trustee was entitled to the value of the use and occupation of the premises. Upon confirmation of the sale the right of possession to the land passed to the purchaser, the plaintiff. The sale was not consummated and title did not pass to the purchaser until confirmation. (Remington on Bankruptcy, 3d ed., sec. 2552.) By its purchase the plaintiff obtained whatever title the bankrupts had in the land at the time of the sale (Black

on Bankruptcy, 3d ed., sec. 480), and nothing more. (*Carney v. Averill,* 110 Me. 172, 85 Atl. 494; 7 C. J. 242.)

The trustee did not transfer nor purport to transfer to the
[4] plaintiff any right of action which he had against the defendant because of her wrongful use and occupation of the land. True, as counsel for plaintiff says, "the transfer of a thing transfers also all its incidents, unless expressly excepted" (sec. 6857, Rev. Codes 1921), but the value of the use and occupation of the land from the date of the adjudication to the date of confirmation of the sale was not an incident to the land.

The term "incident" is used both substantively and adjectively of a thing which usually, naturally and inseparably depends upon, pertains to or follows another that is more worthy. (*Commonwealth* v. *Wampler,* 104 Va. 337, 113 Am. St. Rep. 1029, 7 Ann. Cas. 422, 1 L. R. A. (n. s.) 149, 51 S. E. 737; Bouvier's Law Dictionary.)

"A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in case of a way, or watercourse, or a passage for light, air or heat over or across the land of another." (Sec. 6671, Rev. Codes 1921.)

As the bankrupts did not have any right to possess the land after the adjudication, and the trustee did not sell any right of action, plaintiff's right of action cannot antedate the day upon which the sale was confirmed.

3. In the absence of defendant's pleading plaintiff was en-
[5] titled to recover for the value of the use and occupation of the premises from the date of confirmation of the sale to the date of filing the complaint. Defendant, however, admitted remaining in possession of a portion of the premises even up to the date of filing her answer. She should, therefore, be held liable because of that possession during that period of time. As is stated in *Leyson* v. *Davenport,* 38 Mont. 62, 98 Pac. 641, plaintiff is entitled to damages in an amount equal to the reasonable value of the rents and profits for the use and occupation of the premises during the time defend-

ant occupied the same. (And see *Power Mercantile Co.* **v.** *Moore Mercantile Co.,* 55 Mont. 401, 177 Pac. 406.)

The judgment is reversed and the cause is remanded to the district court of Judith Basin county for a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN ᵉʳ ncur.

Rehearing denied March 22, 1928.