N BAR N LAND & LIVESTOCK CO., APPELLANT, *v.* TAYLOR, SHERIFF, RESPONDENT.

(No. 7,054.)

(Submitted April 29, 1933. Decided May 25, 1933.)

[22 Pac. (2d) 313.]

*Messrs. Loud & Choate,* for Appellant, submitted a brief; *Mr. I. W. Choate* argued the cause orally.

*Mr. George W. Farr, Mr. Lee B. Farr* and *Mr. A. G. Mc-Naught,* for Respondent, submitted a brief; *Mr. George W. Farr* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is a claim and delivery action in which the plaintiff seeks to recover of the defendant sheriff alfalfa hay seized by the sheriff in an attempt to foreclose a chattel mortgage. Upon an agreed statement of facts and some oral testimony, the lower court rendered judgment for the defendant, and, after the denial of a motion for a new trial, the plaintiff appealed.

The plaintiff is a Montana corporation, of which Percy Williamson has been and is the president. For some years William Siedentopf and wife had owned land in Custer county, a portion of which yielded annually a crop of alfalfa. The land was subject to a first mortgage of $11,600 owned by the Federal Land Bank of Spokane, and to a second mortgage of $31,000 owned jointly by Williamson and the First National Bank of Miles City.

On October 31, 1929, Siedentopf executed and delivered to Snell Bros. an instrument in the form of a chattel mortgage, whereby the mortgagor purported to mortgage all the mortgagor's interest in all crops of every kind, including grass, which had been or might thereafter be grown, planted, cultivated or harvested upon the land during the year 1930. The

instrument purported to be executed by "Siedentopf & Co.
Wm. Siedentopf of Miles City, residing in the county of
Custer," and was signed "Siedentopf & Co., by Wm. Sieden-
topf." The acknowledgment thereto was by Mr. Siedentopf
personally, not by him as president of the corporation. The
certificate that the mortgagor had received a copy of the
mortgage was signed "Siedentopf & Co., by Wm. Siedentopf."
The instrument was filed for record with the county clerk on
October 31, 1929.

The real estate mortgages mentioned above were past due,
and the mortgagors were delinquent in the payment of interest
and taxes. John A. Sanderson, receiver of the bank, made
repeated efforts to obtain the money due the bank upon the
Siedentopf indebtedness. When he learned of the chattel
mortgage, immediately after it was filed, he talked with Sieden-
topf and a little later with Williamson about it. He said to
Williamson, having in mind the chattel mortgage, that, if there
"was no chance of getting any crop from the place or any
income from it," there would be another year's taxes and in-
terest to pay, and, if that course continued, the bank would
not have any equity in the place. He proposed that Williamson
take over the bank's interest in the mortgage, but Williamson
was loath to do that. Eventually, however, through Sander-
son's negotiations, on February 20, 1930, a deed to the land
was executed by Siedentopf and wife to Williamson, and a
correction deed was made on March 8, 1930. Williamson took
over the bank's interest in the second mortgage, and assumed
and later paid the mortgage to the Federal Land Bank. In
July, 1930, he conveyed the property to the plaintiff.

On March 8, 1930, Williamson and Siedentopf entered into
an agreement in writing, whereby Siedentopf agreed to furnish
all labor, machinery, tools and the like, necessary properly
to irrigate and cultivate approximately fifty acres of land (that
mentioned in the chattel mortgage), and to harvest the crop
grown thereon; also to keep all buildings and fences thereon
in repair at his own expense. As compensation Williamson

agreed to pay Siedentopf $150 per month for six months. The parties carried out this agreement.

On March 8 nothing was growing upon the land, but resulting from irrigation and cultivation alfalfa grew from roots then in the ground, and a crop of hay of the value of $800 was harvested. After the hay was in stack, Snell Bros. placed a certified copy of the purported chattel mortgage in the hands of the sheriff, with instructions to seize and sell the hay. This suit resulted.

Plaintiff insists that the chattel mortgage was executed by the corporation and not by Siedentopf individually, and, as it was not acknowledged by the corporation, the filing thereof did not impart notice. The trial court thought this immaterial, finding as a fact that Williamson had actual notice of the chattel mortgage prior to purchase of the premises.

Over objection that such testimony would vary the terms of a written instrument, the court, upon the theory that the instrument is ambiguous with respect to the mortgagor, permitted Siedentopf to testify that he did not understand that the corporation was mortgaging the crop; his understanding was that he, the owner of the land and crop, was doing so to secure an indebtedness of the corporation. The propriety of admitting this testimony is doubtful, to say the least.

The mortgage was good as between the mortgagor and the mortgagee in either event. Testimony presented by both plaintiff and defendant justifies the conclusion that Williamson and Sanderson regarded the mortgage, of which they had actual knowledge, as the personal obligation of Siedentopf, and that Williamson purchased the land with his eyes open.

The case was presented in the trial court and here upon the theory that the crop was *fructus industriales*. The roots were in the ground; the situation being the same as if it were a crop of winter wheat. It required the industry of man to bring it to maturity. Section 8290, Revised Codes 1921, provides in part: "A mortgage may be given upon a growing

354

crop, or a crop to be grown, and the lien thereon continues after severance."

The crop which is the subject of this litigation was in existence and the lien attached thereto when the mortgage was given. (11 C. J. 442; *Moccasin State Bank* v. *Waldron*, 81 Mont. 579, 264 Pac. 940; *First Nat. Bank* v. *Yuma Nat. Bank*, 30 Ariz. 188, 245 Pac. 277.)

If the mortgagor is the owner and in possession of the land when the lien attaches to "a crop to be grown," the lien cannot be defeated by a conveyance of the premises to a person who has actual or constructive notice thereof. This is the clear intent of the statute. To hold otherwise would put it in the power of a mortgagor, who has obtained a loan and secured the same by a crop to be grown, to destroy the security by selling the land and yielding its possession to his vendee. Thus the intent of the statute designed for the benefit of farmers needing money to carry on their activities would be nullified. (See *Moccasin State Bank* v. *Waldron*, supra; 1 Jones on Chattel Mortgages and Conditional Sales, sec. 130; *Luce* v. *Moorehead*, 73 Iowa, 498, 35 N. W. 598, 5 Am. St. Rep. 695; *First National Bank of Harrington* v. *Womach*, 128 Wash. 492, 223 Pac. 586; *Congdon* v. *G. M. H. Wagner & Sons*, 207 Cal. 373, 278 Pac. 863.) No doubt the operation of the statute may occasionally work hardship; but the wisdom or unwisdom of the law is for the legislative body, not for us, to decide.

The judgment must be, and is, affirmed.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.