BENNY LEIGH, Plaintiff-Appellant, v. CHARLES LYNCH, Defendant-Appellee.

Fifth District No. 5—84—0538

Opinion filed April 10, 1985.—Rehearing denied May 13, 1985.

Robert L. Douglas and Fred W. Johnson, both of Law Offices of Robert L. Douglas, of Robinson, for appellant.

David K. Frankland, of Albion, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

The plaintiff, Benny Leigh, appeals from a judgment entered by

the circuit court of Edwards County in favor of defendant, Charles Lynch, after trial before the court. The only issue on appeal is whether the doctrine of emblements applies to a clover crop which plaintiff had planted on real estate plaintiff had previously farmed as a year-to-year tenant of defendant's predecessor in title. We conclude that on the facts of the instant case it does.

On July 29, 1983, plaintiff filed a one-count complaint which alleged that in January 1982 plaintiff planted a clover crop on 32 acres of land leased by plaintiff from Ralph and Betty Troup, the owners; that the Troups sold the land to defendant; that the clover crop was due to be cut in July 1983 for hay and seed; and that during June 1983 defendant destroyed the clover crop. The suit prayed for $3,840 damages.

At trial, plaintiff testified that he farms 550 acres of land and that he had farmed the Troup property, which contained 100 acres. He related that in the fall of 1981, wheat was sown on the 32 acres in question and that in January 1982 clover was planted on the same acreage. Plaintiff stated that he planned to harvest the clover crop in July 1983. Plaintiff conceded that he could have harvested stubble from the clover in 1982; however, in 1982, he had no need for stubble and chose to wait for the clover to mature in order to get a better price and a seed crop. Plaintiff related that in May or June 1983 the crop was shrunken as if it had been sprayed by a chemical. According to plaintiff, if the clover had been harvested in August 1982, the summer after it was planted, the harvest would have produced weeds and stubble as well as some clover. Plaintiff also testified to the expected yield, the price at which he expected to sell the yield, and the cost of producing the crop, and stated that clover can also be used as a ground cover to protect the land.

The parties do not dispute that in September 1982 plaintiff received proper notice to terminate tenancy of farmland pursuant to section 9—206 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 9—206). Plaintiff further testified that in February 1983 he sent a registered letter to defendant which stated that plaintiff claimed the clover crop as belonging to plaintiff.

Defendant testified that he purchased the Troup property on October 21, 1982, and that he was aware of clover crop on the land at that time. Defendant admitted that a chemical to kill the crop was applied at his direction. Defendant testified as to his opinion of profit per acre the clover would have made if it had been harvested in 1983.

Mike Baker, who is in the seed business, testified to the proximate price of seed clover in August 1982 and the amount of seed that

needed to be applied to the 32 acres.

The court found that plaintiff was entitled to recover from the defendant the net profits plaintiff would have realized if the crop had not been destroyed. The court entered judgment for plaintiff in the sum of $3,000. Defendant filed a motion to vacate judgment; and on July 27, 1984, the court vacated the prior judgment and entered judgment in favor of defendant on the basis that the planting of a clover crop, which is a two-year crop, was not relevant to the issue of termination of the plaintiff's farm tenancy.

The notice which is required to be given to terminate year-to-year tenancy of farmland, as existed in the case at bar, is specified in section 9—206 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 9—206), which states:

> "Notice to terminate tenancy of farm land. In order to terminate tenancies from year to year of farm lands, occupied on a crop share, livestock share, cash rent or other rental basis, the notice to quit shall be given in writing not less than 4 months prior to the end of the year of letting. Such notice may not be waived in a verbal lease. The notice to quit may be substantially in the following form: ***."

■ ■ The common law doctrine of emblements is applicable where a person holds land for an indefinite period subject to termination at a time which cannot be ascertained beforehand, as is the case of a life tenant. Under that doctrine, such a tenant, or his legal representative, is entitled to cultivate and to remove from the land, after the termination of the estate, such annual crops as the tenant had planted thereon prior to the termination of the estate, provided such termination was not brought about by any fault on his part. Annot., 47 A.L.R.3d 784, 788 (1973).

■ ■ Historically, crops have been divided into two general classes: *fructus naturales,* which are crops produced by the action of nature alone; and *fructus industriales*, annual crops that must be planted or sown each year and which require the attention of humans to produce them. *Fructus naturales* has been said to include any plant which has perennial roots (such as trees, shrubs, and grasses) and *fructus industriales* to include those plants which are sown annually and grown primarily by manual labor (such as wheat, corn and vegetables). (21 Am. Jur. 2d *Crops* sec. 2 (1981).) Crops which may be subject to the doctrine of emblements include corn, wheat, rye, potatoes, garden vegetables, and other crops which are produced annually, not spontaneously, but by labor and industry. For this reason, they are called *fructus industriales*. (21 Am. Jur. 2d *Crops* secs. 2 and 25

(1981).) The classification of crops as either *fructus naturales* or *fructus industriales* is chiefly of importance with regard to the doctrine of emblements, which concerns itself with the right of a tenant to such crops after termination of his tenancy.

▉▉ ▉ Many courts now regard as *fructus industriales* a growing crop which owes its existence in its final perfection and abundance to the care and cultivation of man, even though it may develop from perennial roots. In some instances, intention has been declared to be the criterion in determining whether fruits of trees and perennial roots should be included within the doctrine of emblements. Therefore, if on one hand the purpose of planting is not the permanent enhancement of the land but merely to secure a single crop which is to be the sole return for the labor expended, the product falls under the classification of emblements. However, if on the other hand, the tree, bush or vine requires only one planting and will bear successive annual crops, the product goes to the betterment of the land and will be classified as *fructus naturales*, and the right of emblements will not attach. 21 Am. Jur. 2d *Crops* sec. 2 (1981).

▉▉ Courts have split on whether hay, grass, and clover should be governed by the doctrine of emblements. Some cases have held that timothy and clover are perennial grasses and are not included in the definition of emblements because clover and timothy will spring from the root for several successive years. (See, *e.g., Reiff v. Reiff* (1870), 64 Pa. 134.) The modern view, however, is that clover can be an emblement. (See, *e.g., Gentry v. Alexander* (1949), 311 Ky. 344, 224 S.W.2d 143.) We conclude that the modern view should be followed in Illinois. The doctrine of emblements allows the tenant to enter upon the land in order to cultivate his immature crops and harvest them when they become mature (21 Am. Jur. 2d *Crops* sec. 25 (1981)); and since the clover in the case at bar did not mature until the second summer, plaintiff should have been allowed to harvest the clover.

We find this case similar to *Gentry v. Alexander* (1949), 311 Ky. 344, 224 S.W.2d 143, in which clover had been sown by the life tenant in 1948. On April 12, 1949, the owner of the life estate died. The clover had been clipped in the fall of 1948. The Kentucky statute (Ky. Rev. Stat. sec. 350) provided that all the emblements of the lands of a person dying after March 1 which are severed before the following December 31 shall be assets in the hands of his personal representative. The Court of Appeals of Kentucky quoted with approval the opinion of the trial court, which stated in part:

"[Clover] is certainly a crop produced through the act of the tenant in sowing the seed, and so planned by her, for all practi-

cal purposes as much so as if she had scattered the seed. It is not an incident of the land; not a spontaneous or natural growth; not a long range product for the enhancement of the value of the land; but one produced by the planning and industry of the tenant, for her own profit." (311 Ky. 344, 350, 224 S.W.2d 143, 146.)

The *Gentry* court found no requirement in a test for emblements that the crop must have been seeded not more than 12 months before its harvest; and the clover was awarded to the representative of the life tenant's estate.

The testimony in the case at bar establishes that the clover was planted by plaintiff for his own profit and not for the enhancement of the land. As of the first year the clover was immature, and the plaintiff should have been allowed to harvest the clover when it matured.

Defendant relies on *Klesath v. Barber* (1972), 4 Ill. App. 3d 86, 280 N.E.2d 283, which is distinguishable from the case at bar. There, the issue was whether a genuine issue of material fact existed as to the proper termination of the farm tenancy; however, in the case at bar, the parties do not dispute that the tenancy was properly terminated. The issue is whether the doctrine of emblements applies to the clover planted by the plaintiff prior to the termination of the farm tenancy.

For the foregoing reasons, the judgment of the circuit court of Edwards County is reversed and judgment is entered for plaintiff and against defendant in the amount of $3,000, which was the amount of damages found by the court in its first ruling in favor of plaintiff.

Reversed. Judgment entered for plaintiff.

HARRISON and KARNS, JJ., concur.