(No. 62024.—

BENNY LEIGH, Appellee, v. CHARLES LYNCH, Appellant.

*Opinion filed May 21, 1986.*

David K. Frankland, of Albion, for appellant.

Law Offices of Robert L. Douglas, Ltd., of Robinson (Robert L. Douglas and Fred W. Johnson, of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

This action arose following the sale of a parcel of land in Edwards County. The plaintiff, Benny Leigh, a tenant farmer under a year-to-year oral lease, seeded 32 acres of clover on the land prior to its sale. The defendant, Charles Lynch, the new owner of the property, destroyed the clover some five months after plaintiff's lease expired, but approximately two months before the crop would mature. The plaintiff maintained that under the doctrine of emblements he was entitled to reenter the premises and harvest the clover. He initiated this action to recover income allegedly lost as a result of

defendant's action. The circuit court of Edwards County entered judgment for the defendant. The appellate court reversed (133 Ill. App. 3d 659), and we granted defendant leave to appeal.

The record discloses that, for 14 years under an oral year-to-year lease, the plaintiff, Benny Leigh, farmed property in Edwards County owned by Ralph and Betty Troup. In January 1982, plaintiff seeded clover on 32 acres of the Troup property in a cover crop of wheat. This clover could have produced a crop of stubble hay in August or September of 1982 after the wheat had been harvested. It would have matured to produce a crop of seed and hay in July 1983.

On September 1, 1982, plaintiff received written notice that the Troups were selling the property and that his tenancy would be terminated as of January 1, 1983. On October 21, 1982, the Troups completed the sale of their property to the defendant, Charles Lynch. In February 1983, the plaintiff sent a letter to Ralph Troup stating that the clover crop was his and that he intended to harvest it. In May or June of 1983, the defendant destroyed the 32 acres of clover. The plaintiff then filed a one-count complaint in the circuit court of Edwards County, seeking damages for his loss of income.

During the bench trial of this cause, the plaintiff testified that he did not harvest the stubble hay in 1982, because he had no need for it, and because the hay and seed he intended to harvest in July 1983 would have brought a better price. The court found that the plaintiff was entitled to the net profit he would have realized had the clover not been destroyed. Judgment was entered for the plaintiff in the amount of $3,000, based upon the market prices for the respective crops and the projected yield of the clover.

The defendant promptly filed a motion to vacate the judgment. After examining the pleadings and hearing

the arguments of counsel, the trial court set aside its initial judgment and entered judgment for the defendant. In its order, the court found that the defendant, not the plaintiff, had been entitled to possession of the property for the time periods involved. The court also found the planting of a two-year crop to be irrelevant to the issue of termination of the plaintiff's farm tenancy. The plaintiff appealed this decision.

The appellate court reversed the trial court's final decision and entered judgment for the plaintiff in the amount of $3,000. (133 Ill. App. 3d 659.) The court concluded that the doctrine of emblements could be applied to a perennial crop such as clover. (133 Ill. App. 3d 659, 663.) The court then found that since this clover had been planted by the plaintiff for his own profit, he should have been allowed to harvest it at maturity. (133 Ill. App. 3d 659, 664.) We granted the defendant leave to appeal pursuant to Rule 315 (94 Ill. 2d R. 315(a)).

Section 9—206 of the Code of Civil Procedure provides that "[i]n order to terminate tenancies from year to year of farm lands *** notice to quit shall be given in writing not less than 4 months prior to the end of the year of letting." (Ill. Rev. Stat. 1983, ch. 110, par. 9—206.) There is no question that the plaintiff received proper notice of the termination of his tenancy.

Illinois has long recognized the right of a tenant who holds farmland for an indeterminate period to remove from the land, after the termination of his tenancy, the emblements which he planted prior to such termination. (*Keays v. Blinn* (1908), 234 Ill. 121, 123; *Roberts v. McAllister* (1922), 226 Ill. App. 356, 359; *Jones v. Ritter* (1917), 206 Ill. App. 487, 491.) The right is the privilege (Brown, Personal Property sec. 17.2, at 590 (1975)) of ingress and egress for necessary purposes, not a right of possession, and it must be exercised within a reasonable time after the tenancy has ended (21A Am. Jur. 2d

*Crops* sec. 25 (1981)). Since he possesses no estate or interest in the land itself, the tenant's privilege is analogous to a license, not an easement. (See *Mueller v. Keller* (1960), 18 Ill. 2d 334, 340.) Any subsequent landowner takes possession of the property subject to this limited privilege. (See *Roberts v. McAllister* (1922), 226 Ill. App. 356; see also *Falk v. Amsberry* (1977), 279 Or. 417, 569 P.2d 558; 21A Am. Jur. 2d *Crops* sec. 25 (1981).) The purpose behind this doctrine is the encouragement of agriculture and the protection of the tenant's interest. If the right of emblements did not exist, the tenant would be deterred from putting the premises in crops or at least in certain kinds of crops. (*Roberts v. McAllister* (1922), 226 Ill. App. 356, 359.) The term "emblements" is at times referred to as a doctrine or a right. It is also used as a classification of crops to which a tenant is entitled after the termination of the tenancy, referred to as "away-going crops." (See 21A Am. Jur. 2d *Crops* sec. 2, at 599 (1981).) It has also been held that the term "emblements" is synonymous with *fructus industriales*. See 25 C.J.S. *Crops* sec. 4, at 7 (1966).

In this action, we must determine to what extent, if any, this doctrine should be applied to clover, a perennial crop. The plaintiff urges that this right should be extended to allow a tenant farmer to harvest the *first mature crop* from any perennial planted prior to the termination of his tenancy. We cannot agree.

Traditionally, the doctrine of emblements applied only to *fructus industriales,* or any species "which ordinarily repays the labour by which it is produced, within the year in which that labour is bestowed, \*\*\* things yielding present annual profit \*\*\*." (*Graves v. Weld* (1833), 5 Barn. & Adol. 105, 118-19, 110 Eng. Rep. 731, 736; see also *Hendrixson v. Cardwell* (1876), 68 Tenn. 389.) Thus the doctrine was limited to crops such as corn, wheat, vegetables and the like. (*Reiff v. Reiff* (1870), 64 Pa. 134,

137; Annot., 47 A.L.R.3d 784, 796 (1973); 21A Am. Jur. 2d *Crops* secs. 2, 25 (1981).) A plant with perennial roots, such as clover, was classed as *fructus naturales* (21A Am. Jur. 2d *Crops* sec. 2 (1981); 25 C.J.S. *Crops* sec. 3 (1966)), which fell outside the operation of the doctrine (*Reiff v. Reiff* (1870), 64 Pa. 134, 137). This definition is now generally held to be too restrictive in light of modern agricultural practices.

Over time, the concept of *fructus industriales* and of emblements expanded to include growing crops which owe their perfection and abundance to the tenant farmer's initiative, labor, and expense during the agricultural year. (*Gentry v. Alexander* (1949), 311 Ky. 344, 345-46, 224 S.W.2d 143, 144; see also 21A Am. Jur. 2d *Crops* sec. 25 (1981); Annot., 47 A.L.R.3d 784, 796 (1973); 25 C.J.S. *Crops* sec. 3 (1966).) Under the rule as set forth in the Restatement of Property there are embraced both crops which the tenant has actually sown and those such as orchard fruits in which the tenant's labor is essential to production of the crop though the trees would remain part of the realty. (Restatement (Second) of Property sec. 12.3, Reporter's Notes, at 478-79 (1977).) Under this construction, perennial plants may be classified as emblements if they require "extensive cultivation each crop year in order to bring forth the crop." (Annot., 47 A.L.R.3d 784, 788 (1973).) Thus, crops such as hops, sugar cane (Restatement of Property sec. 121, comment *f* (1936)), and some artificial grasses (2 Tiffany, Real Property sec. 600, at 543 (3d ed. 1939)), may be included within the modern statement of the doctrine.

The appellate court classified the clover crop in question as *fructus industriales* based upon the plaintiff's intent or purpose for planting the crop. (133 Ill. App. 3d 659, 663-64.) We do not agree that intent should be the criterion for determining whether the doctrine of emblements should be applied in a particular case. The difficul-

ties in determining a tenant farmer's intent or purpose for planting a particular perennial crop are readily apparent. For example, the determination may have to be made many months after planting; a contemporaneous expression of intent by the tenant may be lacking, or the species involved might be equally suited as a cash crop or a permanent enhancement to the land. In our case, for example, it is argued that the tenant, when he seeded the clover, did not intend to harvest it for hay or seed but intended to destroy it and plant a no-till crop. It is argued that only after he received the notice to quit did he assert a right to harvest the clover.

We recognize that the owner of land has a right to the undisturbed occupation and enjoyment of his property (*Cuneo v. City of Chicago* (1942), 379 Ill. 488; *Harrison v. Repach* (1971), 132 Ill. App. 2d 915), and that any interpretation of the doctrine of emblements must take this right into consideration. An interpretation of the doctrine of emblements that would entitle the tenant to the *first mature harvest* from a perennial (the construction urged by the plaintiff), simply because the tenant planted the crop at some remote point in time, could deprive the landowner of the right to the use of his property for a considerable period. (*Graves v. Weld* (1833), 5 Barn. & Adol. 105, 121, 110 Eng. Rep. 731, 737.) Thus, if we abandon the traditional concept of *fructus industriales* and adopt the construction of the doctrine of emblements urged by the plaintiff, the concept could be applied to such crops as asparagus, ginseng, or other perennials which do not produce their *first mature crop* until several years after planting. A reasonable limitation must be applied to the doctrine to protect the owner's right to the use of his property and, at the same time, to protect the right of the tenant to the fruits of his industry.

It has been held that under the doctrine of emble-

ments, the tenant is entitled to only one crop after the termination of his tenancy. (*Falk v. Amsberry* (1977), 279 Or. 417, 420-21 n.2, 569 P.2d 558, 560 n.2.) Also, it has been stated that the privilege of removal of the crop extends only to the first annual crop, although a tenant planting clover and grasses may not be fully compensated for his money and labor until he has harvested several crops. Brown, Personal Property sec. 17.2, at 591 (1975).

In shaping a policy to protect the respective interests of the property owner and the tenant, we find the modified emblements doctrine stated in section 121 of the Restatement of Property (1936) helpful. Restatement (Second) of Property does not address this subject in the same detail as does the Restatement of Property in section 121, but includes a brief discussion of the right of the tenant to harvest crops after the termination of the tenancy in section 12.3, comment *h*.

Section 121 of the Restatement of Property provides:

> "Except when the conduct of the owner of a possessory estate for life ends his estate, such owner, or the personal representative of such deceased owner, has the privilege to cultivate and to harvest such annual crops as were planted prior to the event which ended the estate for life." (Restatement of Property sec. 121, at 379 (1936).)

Comment *f* to section 121 defines what constitute annual crops as follows:

> "*Annual crops—What constitute.* The term 'annual crops,' as used in this Section connotes not only those crops which have to be placed in the ground each year, such as cotton, wheat, barley, rye, corn, peas, beans, hemp, flax, parsnips, carrots, turnips, potatoes and melons but also those crops as to which the produce in any single year is principally the result of the attention and care exerted in that same agricultural year, such as hops and sugar cane. Artichokes and asparagus are typically

not 'annual crops.' " (Restatement of Property sec. 121, comment *f*, at 382 (1936).)

The significant difference between this definition and the traditional concept of emblements is found in the expansion of the application of the doctrine to plants that may not ordinarily be considered *fructus industriales* or emblements, but which, nonetheless, produce an annual crop as the result of the attention and care exerted by the tenant. However, under the requirement of the Restatement definition, this attention and care must be exerted by the tenant in the agricultural year in which the crop is produced. Presumably, under this definition, that which may properly be considered as a perennial may, nonetheless, produce an annual crop that may be removed by the tenant after the expiration of the tenancy, if the production of that crop results from the tenant's attention and care in the same agricultural year.

In our case no crop of hay or seed was produced as a result of any attention, care or expenditure by the tenant within the definition of comment *f* of section 121. The effort and expenditure by the tenant that resulted in the crop now claimed was expended in January 1982, when the crop of clover was seeded in a stand of winter wheat. A crop of stubble hay, although of low quality, was available to be harvested in the fall of 1982, but the tenant chose not to harvest it. There is no evidence that the crop of hay and seed now claimed by the tenant was the result of work or expenditure by him before the date that the tenant received notice of the termination of the tenancy in the agricultural year during which it matured.

The cases cited by plaintiff in support of his position do not require a different result, since they either deal with a different perennial crop, a statutory right of emblements, or a different standard for determining what crops will be included within the doctrine.

The Montana case of *N Bar N Land & Livestock Co. v. Taylor* (1933), 94 Mont. 350, 22 P.2d 313, dealt with a crop of alfalfa. In contrast to this case, the Montana court found that the hay in question resulted from irrigation and cultivation performed by the tenant during the crop year. 94 Mont. 350, 353, 22 P.2d 313, 314.

The decision in *Falk v. Amsberry* (1977), 279 Or. 417, 569 P.2d 558, is clearly distinguishable. The Oregon court was operating under a statute which allowed a tenant farmer to harvest *"any crop or produce of the soil* planted or sown by him before the service of notice to quit."* (Emphasis added.) (279 Or. 417, 420, 569 P.2d 558, 559, quoting Or. Rev. Stat. sec. 91.230 (1985) (formerly sec. 91.310).) We have no comparable statute in Illinois.

Finally, in *Gentry v. Alexander* (1949), 311 Ky. 344, 224 S.W.2d 143, while the court did find that clover was an emblement, this decision was based in part upon the tenant farmer's intent or purpose at the time the crop was seeded. (311 Ky. 344, 348-49, 224 S.W.2d 143, 145.) The court noted that the tenant farmer's chief purpose in growing the crop had been to gain a profit. As we noted above, we do not believe that the tenant's intent should be included as a criterion for determining what crops fall within the operation of the doctrine.

The circuit court of Edwards County was correct in entering judgment for the defendant. For the reasons stated above, the judgment of the appellate court in this action is reversed, and judgment for the defendant entered in the circuit court of Edwards County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*